Case 05-19558     Filed 05/31/07     Doc 139

POSTED ON WEB SITE

NOT FOR PUBLICATION

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA
FRESNO DIVISION



FILED

MAY 3 1 2007

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

In re

Rogelio A. Casimiro and
Belen T. Casimiro,

        Debtors.

Case No. 05-19558-B-7

DC No. HAR-2

## MEMORANDUM DECISION REGARDING MOTION FOR APPROVAL OF STIPULATION FOR RELIEF FROM THE AUTOMATIC STAY STAY AND FOR COMPROMISE OF A DISPUTED CLAIM

This memorandum decision is not approved for publication and may not be cited except when relevant under the doctrine of law of the case or the rules of res judicata and claim preclusion.

      Patrick Kavanagh, the chapter 7 trustee (the "Trustee"), asks this court to approve a stipulation (the "Stipulation") entered into between the Trustee, the Debtors, and a group of creditors (Arnaldo Lara and ten others) (the "Lara Claimants") who filed a proof of claim in excess of $3.5 million (the "Lara Claim"). The Stipulation provides for relief from the automatic stay and it purports to compromise a dispute over the Lara Claim. For the reasons set forth below, relief requested in the Stipulation will be granted in part and denied in part.

      This memorandum decision contains the court's findings of fact and conclusions of law as required by Federal Rule of Civil Procedure 52(a), made applicable to this contested matter by Federal Rule of Bankruptcy Procedure 7052. The bankruptcy court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and 11 U.S.C. § 362[1] and General Orders 182 and 330 of the U.S. District Court for the Eastern District of

---

[1] Unless otherwise indicated, all chapter, section and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1330, and to the Federal Rules of Bankruptcy Procedure, Rules 1001-9036, as enacted and promulgated *prior* to October 17, 2005, the effective date of The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. 109-8, Apr. 20, 2005, 119 Stat. 23.

California. This is a core proceeding as defined in 28 U.S.C. § 157(b)(2)(G).

**Background.**

**The Litigation.**

Prior to the bankruptcy, Debtor Rogelio Casimiro ("Casimiro") operated a business known as Golden Grain Farm Labor. Casimiro contracted to provide farm labor services to various third-party entities that grew primarily table grapes (the "Growers"). The Lara Claimants were employed by Casimiro as farm laborers.

On March 5, 2004, the Lara Claimants filed a civil action against Casimiro in the Kern County superior court (case number S-1500-CV-252445 SPC) for damages based, *inter alia*, on allegations of unpaid wages, and violations of various state laws, including the California Business and Professions Code and the Labor Code, relating to the employment of migrant farm workers (the "Civil Action"). The Civil Action was filed as a class action on behalf of the Lara Claimants and approximately 650 other people who had worked for Casimiro. The Civil Action was amended to include a number of the Growers as defendants, many of whom were subsequently dismissed. A second amended complaint was filed in the Civil Action in September 2005.

This bankruptcy began with the filing of a voluntary petition on October 12, 2005.[2] Commencement of the bankruptcy automatically stayed further prosecution of the Civil Action as to Casimiro. The record does not show that the state court certified a plaintiff class in the Civil Action before the petition was filed.

In December 2005, Casimiro filed a petition in the superior court to remove the Civil Action to the bankruptcy court pursuant to 28 U.S.C. § 1452(a). On June 5, 2006, the U.S. district court granted Casimiro's motion to withdraw the reference of the Civil Action so it can be litigated in conjunction with another "related" civil proceeding

---

[2] The petition was originally filed under chapter 13. The Debtors were unable to confirm a chapter 13 plan, based in part on a substantial tax claim filed by the Internal Revenue Service ("IRS"). (See footnote 7, infra.) The Debtors voluntarily converted the case to chapter 7, and the Trustee was appointed on December 29, 2005.

pending in the district court against some of the Growers. That "related" litigation is based on claims arising under federal statutes, including the Agricultural Workers Protection Act, 29 U.S.C. § 1801 et seq. The withdrawn Civil Action was assigned case number 06-CV-00028-AWI SMS (hereinafter, the "District Court Litigation").

**The Debtors' Discharge.**

On February 2, 2006, the Debtors brought a motion for authority to publish notice of commencement of the bankruptcy on the grounds that most of Casimiro's former farm worker employees were "unavailable" for the giving of actual notice, i.e., they did not have permanent addresses, could not be properly listed in the bankruptcy schedules, and could not be located for the giving of actual notice as required by the Bankruptcy Code. Based on the pendency of the District Court Litigation, the Debtors were concerned that some or all of Casimiro's former employees may assert future claims which could be excepted from the bankruptcy discharge, absent the giving of notice, pursuant to § 523(a)(3). The Lara Claimants opposed the motion. At the hearing, the court declined to grant the motion because, *inter alia*, the Debtors were unable to show that their plan for publication of notice was reasonably likely to reach any of the "unavailable" employees. The motion was withdrawn.[3] Casimiro's discharge was entered, without objection, in the bankruptcy case on March 29, 2006.

---

[3] On March 2, 2006, Debtors brought a motion to vacate the bar date for the filing of nonpriority unsecured claims. The Ninth Circuit has held that the "no-notice" discharge exception under § 523(a)(3) does not apply in cases where there are no assets and no bar date is set for the filing of claims. *In re Beezley*, 994 F.2d 1433, 1436-37 (9th Cir. 1993). This is technically not a "no-asset" case. However, the Debtors' motion was supported by a declaration from the Trustee stating that there are not enough assets to pay all of the administrative and priority claims, and that there will not be any distribution to unsecured claims. Therefore, as to the nonpriority unsecured claims, this does appear to be a "no-asset" case and the court granted the Debtors' motion. Granting of that motion does not directly adjudicate the dischargeability of any claims against the Debtors. Questions of dischargeability must be resolved through an adversary proceeding. Fed.R.Bankr.P. 7001(6). That, of course, would require an action commenced by, or the giving of actual notice to, the same employees who the Debtors contend are now "unavailable" for the giving of notice.

**The Lara Claim Objection.**

On May 8, 2006, the Lara Claimants collectively filed a proof of claim in this bankruptcy case (claim docket number 20) in the amount of $3,561,000. The Lara Claim purports to be an unsecured priority claim pursuant to § 507(a)(4)[4] on behalf of the eleven Lara Claimants and all members of a potential "claimant class" (all 650 of them). Attached to the Lara Claim is a copy of the second amended complaint filed in the Civil Action, and the "claimant class" in the Lara Claim appears to be the same group of individuals which the Lara Claimants hope to certify as a plaintiff class in the District Court Litigation (the "Plaintiff Class").

In October 2006, the Debtors filed an objection to the Lara Claim based in part on Casimiro's contention (summarized in the discussion below), and supporting evidence to suggest that the Lara Claimants are not eligible to assert a priority claim under § 507(a)(4) (the "Claim Objection").[5] Specifically, the Debtors contend that none of the Lara Claimants worked for Casimiro within the 180-day period that defines a § 507(a)(4) claim. The Debtors did not object to the amount of the Lara Claim. They simply asked for a determination that the Lara Claim be reclassified as a general unsecured claim. Since the general unsecured claims will not receive any distribution of assets (see footnote 3, supra), a favorable ruling for the Debtors on the Claim Objection would, in theory, enable the Trustee to distribute the assets to administrative and priority claims and close the case.

The Trustee subsequently filed a "joinder" in the Claim Objection and the matter

---

[4]Prior section 507(a)(3) was amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (BAPCPA) effective April 20, 2005. This bankruptcy was filed on October 12, 2005.

[5]The Debtors wrote letters to the Trustee in August 2006, and again in October 2006 asking the Trustee to object to the Lara Claim. The Trustee failed to do so. The Debtors have an interest in getting this case closed as soon as possible so the assets in the estate can be used to pay the IRS' tax claim which is nondischargeable and remains a personal liability of the Debtors. (See footnote 7, infra.)

was set for hearing in March 2007. For reasons that are unclear to the court, the Claim Objection was withdrawn by Casimiro and the Trustee before the Lara Claimants filed any response. It was replaced by the Stipulation which purports to be a compromise of the Claim Objection. The Trustee contends in support of the Stipulation that the bankruptcy case has been fully administered and that resolution of the Lara Claim is the only obstacle to filing a final report and closing of case.

**Relief From the Automatic Stay.**

The Lara Claimants seek permission to let the district court certify the Plaintiff Class pursuant to Fed.R.Civ.P. 23 for prosecution of the District Court Litigation. To the extent that the automatic stay is applicable, and to the extent that relief is limited to certification of a Plaintiff Class in the District Court Litigation, the Stipulation will be approved.

The automatic stay arises upon commencement of the bankruptcy case to temporarily prevent creditors from taking actions against property of the bankruptcy estate. It also protects debtors and their property from collection efforts by creditors. § 362(a). However, as noted above, the Debtors' discharge has been entered. Upon entry of the discharge, the automatic stay terminated automatically as to the Debtors and their property by operation of law. § 362(c)(2)(C). The Debtors are now protected by the discharge injunction under § 524(a). The scope of the discharge injunction is more limited than the automatic stay. The discharge injunction applies only to a debtor's personal liability. It prevents creditors from attempting to collect a discharged debt from a debtor or his/her personal assets. Subsection(e) makes clear that the discharge injunction does not inhibit prosecution of the District Court Litigation, and subsequent collection efforts against the nondischarged defendants. *Patronite v. Beeney (In re Beeney)*, 142 B.R. 360, 362 (9th Cir. BAP 1992). However, Casimiro's role is delegated

to that of a witness who can still be compelled to appear at trial. *Id.* at 363.[6]

To the extent that the automatic stay may still operate to protect property of the bankruptcy estate, it is not clear that the District Court Litigation affects the bankruptcy estate in any way. The Trustee has opted not to intervene and participate in the District Court Litigation and there appears to be little reason for him to do so. The Trustee has stated that the bankruptcy case is ready to close once the questions regarding the Lara Claim are resolved.

Theoretically, prosecution of the District Court Litigation may serve to liquidate the amount of the Lara Claim, but liquidation of the Lara Claim is unnecessary. The Lara Claim has been filed in excess of $3.5 million. Pursuant to § 502(a), a properly filed proof of claim is "deemed allowed" unless a party in interest files an objection. Nobody has yet objected to the stated amount of the Lara Claim, only to its "priority" classification. The Lara Claim is therefore effectively "liquidated" for purposes of administration of this bankruptcy case.

Further proceedings in any court to liquidate the Lara Claim would be a futile exercise unless there are assets to distribute to the Lara Claimants, or unless liquidation of the Lara Claim otherwise affects the Trustee's ability to administer and close the bankruptcy case. In that regard, the Trustee has represented that there are not enough assets to make any distribution to general unsecured creditors.[7] Therefore, liquidation of the Lara Claim is only relevant to the extent that the Lara Claimants may have a priority claim, as opposed to a general unsecured claim, which leads us to the second part of the

---

[6]Having received his discharge, one must ask why Casimiro has not moved for dismissal from the District Court Litigation. While Casimiro is not barred from defending the claims against him in the District Court Litigation, he is not required to, and it is not clear to this court that he is even a necessary party to the District Court Litigation.

[7]The Trustee has represented that the estimated administrative and priority claims will exceed the assets he has collected through administration of the estate. The IRS has filed a proof of claim in the amount of $258,446. The IRS' claim appears to be entitled to "priority" under § 507(a)(8).

Stipulation.

**Compromise of the Lara Claim.**

The Stipulation purports to compromise a dispute over the classification and amount of the Lara Claim. For the reasons set forth above, compromise over the amount of the Lara Claim is only necessary if the Lara Claimants are entitled to assert a priority claim as defined in § 507(a)(4). As to the "priority" issue, the court is not persuaded that there is a real and substantial dispute to be compromised. The Debtors' filed the Claim Objection contesting the Lara Claim's "priority" status on grounds which appear to the court to be well taken. However, the Claim Objection was withdrawn, and the parties negotiated the Stipulation before the Lara Claimants filed any response to show that there are disputed, factual or legal issues to consider.

Federal Rule of Bankruptcy Procedure 9019 gives the Trustee the express authority to compromise a controversy or settle a dispute affecting administration of the estate, subject to court approval. While the opinion of the Trustee is entitled to great weight, the bankruptcy court has a duty to make an informed, independent judgment as to the reasonableness of the proposed compromise. *In re Churchfield*, 277 B.R. 769, 773-74 (Bankr.E.D.Cal. 2002), citing *Protective Committee for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson (TMT Trailer Ferry)*, 390 U.S. 414, 424, 88 S.Ct. 1157, 20 L.Ed.2d 1 (1968). The burden of persuasion is on the Trustee. *In re A & C Properties*, 784 F.2d 1377, 1381 (9th Cir. 1986).

While the court has no reason to question the good faith of the Trustee, when property of the estate is involved, there must be more than mere good faith negotiation of a settlement.[8] The factors which guide the courts of this Circuit in approving a

---

[8] Some of the parties' motivation behind the Stipulation appears to be based on economic factors. Specifically, the Trustee has a desire to close the case as soon as possible, without the delay and expense of having to participate in the District Court Litigation, and defend the estate against a potentially large priority claim. The Debtors want the Trustee to distribute assets to reduce the IRS' nondischargeable tax claim. The Lara Claimants want the assurance that they will receive some money from the estate to help fund their ongoing litigation in the district court.

compromise of controversy are set forth in *A & C Properties*–the court must examine the nature of the dispute and find that the proposed compromise is reasonable, fair and equitable. In determining the fairness, reasonableness and adequacy of a proposed settlement agreement, the court must consider: (a) the probability of success in the litigation; (b) the difficulties, if any, in the matter collection; (c) the complexity of the litigation involved and the expense, inconvenience and delay necessarily attending it; and (d) the paramount interest of the creditors and a proper deference to their reasonable views. *In re A & C Properties*, 784 F.2d at 1381.

Implicit in the *A & C Properties* test is the foundational requirement that the Trustee must make a *prima facie* showing of a real and substantial controversy over the facts and/or the application of law. *In re Churchfield*, 277 B.R. at 774. Even in the absence of an objection to the proposed compromise, the court must make an independent analysis of the relevant factors. The court must identify the disputed issues and determine both the burden upon the estate and the risks associated with resolution of those issues. The court is not required to resolve the disputed issues, but the court must be able to identify them so that the reasonableness of the settlement may be evaluated. "The bankruptcy court must carefully weigh the value of the settled claim against the value to the estate by the settlement." *In re Hermitage Inn, Inc.*, 66 B.R. 71, 72 (Bankr.D.Colo. 1986). The court must be able to "compare the terms of the compromise with the likely rewards of litigation." *TMT Trailer Ferry* at 424-25, 88 S.Ct. 1157.

The Stipulation purportedly fixes the Lara Claim as a "class" priority claim under § 507(a)(4) in the amount of $75,000. Class claims are permitted in the Ninth Circuit. *In re Birting Fisheries, Inc.*, 939, 940 (9th Cir. 1996). However, the proposed "claimant class" must be certified by the bankruptcy court as a proper "claimant class" pursuant to Fed.R.Bankr.P. 9014 and 7023. The named claimants must timely move for certification of the class. *In re Commonpoint Mortgage Co.*, 283 B.R. 469, 475-76 (Bankr.W.D.Mich. 1985), citing *Reid v. White Motor Corp.*, 886 F.2d 1462, 1471 (6th Cir. 1989), cert. denied, 494 U.S. 1080, 110 S.Ct. 1809, 108 L.Ed.2d 939 (1990). "The individuals

seeking class certification have the burden of proving that they are entitled to class certification." *Id.*

The elements which must be satisfied for certification of a "class" are prescribed in Fed.R.Civ.P. 23(a) (made applicable in adversary proceedings and contested matters by Fed.R.Bankr.P. 7023) as follows:

> (a) Prerequisites to a Class Action. One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

These four elements are commonly referred to as numerosity, commonality, typically, and adequacy of representation. *In re Commonpoint Mortgage Co.*, 283 B.R. at 476.

The fundamental problem with the Stipulation is that it summarily equates certification of a Plaintiff Class in the District Court Litigation with certification of a "claimant class" for the Lara Claim in this bankruptcy case.[9] Even if the Lara Claimants successfully certify a Plaintiff Class for prosecution of the District Court Litigation, that does not mean that the Plaintiff Class is automatically certified as a "claimant class," or that it would be entitled to "priority" status under § 507(a)(4) of the Bankruptcy Code. That issue, certification of the Lara Claimants' "priority" status, is not even before the

---

[9]In support of the Stipulation, the Trustee states in a declaration:

> 7. I believe that the appropriate forum to determine the certification of the class is in the pending Federal District Court case which action has been stayed because of the Chapter 7 case of Debtor. The parties['] desire to allow the [District Court Litigation] to go forward only as to Rogelio Casimiro ("Casimiro") and only to the extent necessary to *determine the certification of the claimant class in Claim No. 20*, to appoint class counsel, and to approve class settlement with Casimiro only. . . . (Emphasis added.)

It is clear from this statement that the Trustee fails to recognize any distinction between certification of a Plaintiff Class that may be entitled to prosecute the District Court Litigation, and certification of "claimant class" entitled to "priority" status in this bankruptcy case.

district court. Further, the Trustee seems to make this assumption without any consideration of the (questionable) merits of the "priority" class certification process. The Trustee has failed to offer any evidence or analysis in support of the Stipulation to show, or even suggest, that there is a "real and substantial controversy over the facts and/or the application of law" with regard to the core issue here: the Lara Claimants' right to assert a priority claim under § 507(a)(4), or their ability to certify a "class" of priority claimants similarly situated. *In re Churchfield*, 277 B.R. at 777.

This court has reviewed the Debtors' Claim Objection, and the analysis set forth therein. Based thereon, this court is not satisfied that the Lara Claimants have the right to a priority claim under § 507(a)(4). The problem is readily apparent when one looks at the second and third elements for class certification - commonality and typically. The Lara Claimants are seeking damages in the District Court Litigation pursuant to various state and federal statutes, including the California Business and Professional Code, the California Labor Code, and the federal Agricultural Workers Protection Act. By contrast, the right of any Lara Claimant to assert a priority claim in this bankruptcy case is defined by the Bankruptcy Code, specifically § 507(a)(4). Not everybody who may be eligible to plead claims under the theories advanced in the District Court Litigation will necessarily qualify to have a priority claim under § 507(a)(4) of the Bankruptcy Code. The statutes at issue in the Bankruptcy Code and in the District Court Litigation involve substantially different questions of law and fact. The "commonality" factor under Rule 23 is simply not present.

Further, the Lara Claimants' own pleadings tend to suggest that none of the Lara Claimants even qualify to have a priority claim under § 507(a)(4).[10] As such, the Lara

---

[10] The following analysis is adopted from the Claim Objection which was filed by the Debtors and then withdrawn in favor of the proposed Settlement. Based on the court's own review of the dates and the various pleadings referenced in the Claim Objection, the points raised in the Claim Objection appear to be well taken. The Lara Claimants did not file a response to the Claim Objection before it was withdrawn and this discussion is not intended to be a final adjudication of those issues. The Claim Objection issues are offered here merely to illustrate

Claimants would not hold claims which are "typical" of other potential priority claimants. Pursuant to § 507(a)(4), a priority claim may be filed by an individual for unpaid wages, salaries, or commissions, up to the amount of $10,000, earned within 180 days prior to commencement of the bankruptcy case, or cessation of the debtor's business, whichever occurs first. The Debtors filed the Claim Objection contesting the priority status of the Lara Claim on the grounds that the named claimants were not employed by Casimiro within 180 days prior to the bankruptcy. This bankruptcy was filed on October 12, 2005. Casimiro filed a declaration in support of the Claim Objection stating that he ceased doing business as a farm labor contractor in January 2005. The Lara Claim alleges that the Debtors ceased doing business on an earlier date, November 30, 2004. The actual date of cessation is obviously a factual issue, but giving the Lara Claimants the benefit of the doubt, and working from the earlier date, they would only be entitled to assert priority claims for wages, salaries, or commissions earned **after** June 3, 2004 (180 days prior to November 30, 2004). Any claim for wages, salaries, or commissions earned **before** June 3, 2004, would not appear to be entitled to "priority" status and would therefore be classified as "general unsecured."[11]

The Lara Claim states on its face that the "debt" was incurred in April 2001, over three years **before** the eligible "priority" period. The Lara Claimants commenced the Civil Action against Casimiro in March 2004, approximately three months **before** the eligible "priority" period. It is not unreasonable to infer that the Lara Claimants did not work for Casimiro and accrue any claim for unpaid wages after the Civil Action was filed. Looking to the pleadings filed in the Civil Action itself, specifically the Second Amended Complaint, seven of the Lara Claimants allege that their employment ended in

---

why the court is not willing to approve the Stipulation.

[11]Casimiro filed a declaration in support of the Debtors' claim objection stating that he ceased doing business as a farm labor contractor in January 2005. If this is true, then the "priority" period under § 507(a)(4) would date back to July 2004. None of the Lara Claimants have alleged that they worked for Casimiro on or after July 2004.

September or October 2003. Two of the named Lara Claimants allege that their employment with Casimiro ended "in or about" some unspecified date in April 2004.[12] None of the Lara Claimants contend that they were employed by Casimiro after June 3, 2004.

Based on the foregoing, the Lara Claimants' own pleadings strongly suggest that none of the Lara Claimants are not entitled to assert a priority claim in this bankruptcy case. If none of the Lara Claimants can assert a priority claim, then none of them would be qualified to represent a priority "claimant class" in this bankruptcy.[13] To the extent that the Trustee wants to compromise a purported "dispute" over the Lara Claim by fixing a priority claimant class through the Stipulation, the request must be denied. The court is not persuaded that there is a real or substantial factual or legal dispute to be compromised with regard to priority status of the Lara Claim. *In re Churchfield*, 277 B.R. at 777. Unless the Lara Claim is entitled to priority status, any compromise regarding the amount of the Lara Claim ($3.5 million vs. $75,000) is immaterial and will have no effect on the Trustee's ability to complete his duties, distribute the assets and close the case.

**Conclusion.**

Based on the foregoing, the automatic stay will be modified, to the extent necessary, to permit the Lara Claimants to proceed with the District Court Litigation, including certification of the Plaintiff Class and prosecution to settlement or judgment, so long as the Lara Claimants do not seek to enforce a judgment against the Debtors in violation of the discharge injunction under § 524(a). Prosecution of the District Court Litigation does not appear to affect the Trustee's ability to close this bankruptcy estate.

---

[12]Lara Claim, Exhibit 1; Second Amended Complaint, ¶s 20-28, 97 & 98.

[13]In addition, it is not clear to this court that any motion to certify a claimant class for the Lara Claim would be timely. The Lara Claim was filed on May 8, 2006, almost one year before the hearing for approval of the Stipulation. The only parties in interest to raise the class certification issue were the Debtors in their aborted Claim Objection. The Lara Claimants have done nothing to get their Claim certified under Rule 7023 and the Trustee states that the bankruptcy case is ready to close once classification of the Lara Claim is resolved.

The Trustee's request to compromise a purported "controversy" over the Lara Claim by fixing and allowing the Lara Claim as a "class" priority claim under § 507(a)(4) will be denied absent a showing that there is a bona fide factual and/or legal dispute over the priority status of the Lara Claim. The Trustee shall file and serve an objection to the Lara Claim within 30 days from entry of this Order. The Trustee shall prepare to file his final report and close the case as soon as possible after the renewed claim objection is resolved.

Notwithstanding the foregoing, if the Lara Claimants and the Trustee believe there is a significant factual or legal controversy over the priority status of the Lara Claim, then the Lara Claimants may file a motion to certify a priority "claimant class" and the Trustee may renew his motion to compromise the controversy. The court will consider the offered evidence and legal analysis, and determine if there is a dispute to be compromised, in the context of the motion and the renewed claim objection.

Dated: May  31 , 2008

_____
W. Richard Lee
United States Bankruptcy Judge

Case 05-19558   Filed 05/31/07   Doc 139

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

CERTIFICATE OF MAILING

The undersigned deputy clerk in the office of the United States Bankruptcy Court for the Eastern District of California hereby certifies that a copy of the document to which this certificate is attached was mailed today to the following entities listed at the address shown on the attached list or shown below.

| | | |
|---|---|---|
| Christian L. Raisner, Esq.<br>Weinberg, Roger & Rosenfeld<br>1001 Marina Village Pkwy #200<br>Alameda CA 94501 | Arnaldo Lara<br>c/o Alegria De La Cruz, Esq.<br>2115 Kern St #370<br>Fresno CA 93721 | Rogelio A. Casimiro<br>Belen T. Casimiro<br>1835 Montgomery Ln<br>Delano CA 93215 |
| Leonard K. Welsh<br>4550 California Ave 2nd Fl<br>Bakersfield CA 93309 | Patrick M. Kavanagh<br>1331 L St<br>Bakersfield CA 93301 | Hilton A. Ryder<br>5 River Park Pl E<br>Fresno CA 93720-1501 |
| US Trustee<br>2500 Tulare St #1401<br>Fresno CA 93721 | Judge Anthony W. Ishi<br>District Court<br>2500 Tulare St<br>Fresno CA 93721 | Judge Sandra M. Snyder<br>District Court<br>2500 Tulare St<br>Fresno CA 93721 |

DATED: May 31, 2007        By: _____
                                Deputy Clerk

EDC 3-070 (New 4/21/00)