FILED

SEP 29 2008

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

POSTED ON WEBSITE

NOT FOR PUBLICATION

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA
FRESNO DIVISION

| | |
|---|---|
| In re | Case No. 05-19558-B-7 |
| Rogelio A. Casimiro and Belen T. Casimiro, | DC No. HAR-6 |
| Debtors. | |

**MEMORANDUM DECISION REGARDING MOTION TO COMPROMISE THE TRUSTEE'S OBJECTION TO CLAIM #22 AND COUNTER MOTION TO CERTIFY A CLAIMANT CLASS**

This memorandum decision is not approved for publication and may not be cited except when relevant under the doctrine of law of the case or the rules of *res judicata* and claim preclusion.

Hilton A. Ryder, Esq., of McCormick, Barstow, Sheppard, Wayte & Carruth, LLP, appeared for Patrick M. Kavanagh, Esq., chapter 7 trustee. Patrick M. Kavanagh, Esq., appeared in his capacity as the chapter 7 trustee. Christian L. Raisner, Esq., of Weinberg, Roger & Rosenfeld, appeared for claimants, Arnaldo Lara, et al. Jacob L. Eaton, Esq., of Klein, DeNatale, Goldner, Cooper, Rosenlieb & Kimball, appeared for the debtors, Rogelio A. and Belen T. Casimiro. David A. Dixon, Esq., of Hogan & Klingenberger, appeared for Stevco, Inc., dba Lucich Farms, a nonparty creditor.

Before the court is a motion by Patrick M. Kavanagh, chapter 7 trustee (the "Trustee") to compromise his objection (the "Claim Objection") to a proof of claim filed in this case, docket number 22 ("Claim #22"). Claim #22 was filed by Arnaldo Lara, Franco Ensaldo, Javier Garcia, Ignacio Diaz Borcequin, Mario Laveaga, Mirna Diaz,

Paula Leon, Raul Diaz, Leodegario Mosqueda, and Angelica Rosales on "behalf of themselves and all others similarly situated" (the "Lara Claimants"). Also before the court is a counter motion filed by the Lara Claimants to certify Claim #22 as a "class" claim, to designate the Lara Claimants as the class representatives, and to appoint their attorneys, Weinberg, Roger and Rosenfeld ("Weinberg"), to serve as "class counsel," pursuant to FRBP 7023 (the "Class Motion").

The Trustee, Debtors, and Lara Claimants have entered into a stipulation to grant the Class Motion and settle the Claim Objection (the "Settlement") and request approval by the court. For the reasons set forth below, the Settlement will be approved in part as modified herein. The Class Motion will be denied without prejudice to reconsideration when and if the U.S. district court certifies a plaintiff class and appoints class counsel for the Lara Claimants in their pending civil action against Rogelio Casimiro.

This Memorandum contains findings of fact and conclusions of law required by Federal Rule of Civil Procedure 52 (made applicable to this contested matter by Federal Rule of Bankruptcy Procedure 7052). The court has jurisdiction over this matter pursuant to 28 U.S.C. §1334 and General Orders 182 and 330 of the U.S. District Court for the Eastern District of California. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) & (B).

**Background, Procedural History, and Findings of Fact.**[1]

**The State Court Litigation.** Prior to filing for bankruptcy, Rogelio Casimiro ("Casimiro") operated a business which contracted to provide farm labor services to various third party entities growing primarily table grapes (the "Growers"). The Lara Claimants were employed by Casimiro as farm laborers. In March 2004, the Lara Claimants filed a civil action against Casimiro and several Growers in the Kern County Superior Court (case number S-150-CV-252445 SPC) (the "Civil Action") for damages

---

[1] Relevant facts are drawn from the record in this case, the record of the U.S. district court, declarations filed in support of this motion, and from this court's previous Memorandum Decision filed in this case on June 4, 2007.

based on allegations, *inter alia*, of unpaid wages and violation of various state laws. The Civil Action was filed as a class action on behalf of the Lara Claimants and approximately 650 other people who had worked for Casimiro. Subsequently, the Civil Action was amended to add and dismiss several Growers. A second amended complaint was filed in the Civil Action in September 2005. Concurrently, the Lara Claimants filed actions in the U.S. district court against some of the Growers based on claims arising under federal statutes (collectively, the "District Court Litigation").

**The Bankruptcy.** In October 2005, Casimiro and his wife filed a voluntary petition for relief under chapter 13 of the Bankruptcy Code.[2] Commencement of the bankruptcy automatically stayed further prosecution of the Civil Action as to Casimiro. At that point, the Lara Claimants became unsecured creditors of the bankruptcy estate entitled to file a proof of claim for their unliquidated damages. The record does not show that the state court ever certified a plaintiff class in the Civil Action before the bankruptcy petition was filed.

In December 2005, Casimiro filed a petition in the Kern County Superior Court to remove the Civil Action to the bankruptcy court pursuant to 28 U.S.C. § 1452(a). The Civil Action was docketed in the bankruptcy case as adversary proceeding number 05-01401 (the "Removed Civil Action"). Immediately thereafter, the Lara Claimants petitioned the U.S. district court to withdraw the reference of the Removed Civil Action pursuant to 28 U.S.C. § 157(d) so that their claims against Casimiro could, in theory, be liquidated with the other pending matters in the District Court Litigation.[3]

---

[2]The petition was originally filed under chapter 13. The Debtors were unable to confirm a chapter 13 plan, based in part on a substantial tax claim filed by the Internal Revenue Service. See footnote 7, *infra*. The Debtors voluntarily converted the case to chapter 7, and the Trustee was appointed on December 29, 2005.

[3]Casimiro's discharge was entered without objection on March 29, 2006. As a result, he is now protected from liability to the Lara Claimants by the discharge injunction under 11 U.S.C. § 524(a). As far as this bankruptcy is concerned, the only practical purpose for the Removed Civil Action at this point is to resolve issues relating to "class certification" and to liquidate the

3

The district court granted the Lara Claimants' motion in June 2006, and the Removed Civil Action was docketed in the district court as number 1:06-cv-00028-AWI. The Lara Claimants filed a notice of "related cases" and moved unsuccessfully to consolidate the Removed Civil Action with the other matters in the District Court Litigation. To date, Lara Claimants have not filed a motion to certify a plaintiff class, or to appoint class counsel to pursue the Removed Civil Action. Indeed, a review of the district court's docket suggests that the Removed Civil Action and the other District Court Litigation may be on the verge of dismissal.[4]

**The First Priority Claim.** In May 2006, the Lara Claimants collectively filed a proof of claim in this bankruptcy case (claim docket number 20) in the amount of $3,561,000 purporting to be a "priority" claim pursuant to 11 U.S.C. § 507(a)(4)[5] (the "First Priority Claim").[6] Pursuant to § 726(a), "priority" claims take priority over general

---

Lara Claimants' claim against the bankruptcy estate. This court has approved a limited stipulation for relief from stay which notes that the discharge injunction does not inhibit prosecution of the Removed Civil Action and other collection efforts against nondebtor defendants.

[4]In March 2008, the district court entered a minute order which states: "Counsel are to provide the court with a status report on this case within 10 days, advising on how they wish to proceed, as this case has laid dormant for over a year. Failure to provide the court with a status report will result in the case being placed on the dismissal for lack of prosecution calendar." In response, the Lara Claimants filed a status report asserting that they were fully prepared to proceed with discovery but defendants were not cooperating. Defendants Steveco, Inc. and FAL, Inc., dba Lucich Farms, filed a joint status report stating: "In the meantime, while the motions to dismiss in the [related cases] remain pending in the District Court, neither Defendants nor Plaintiffs have taken any further substantive steps to pursue the Removed Action."

[5]Pursuant to 11 U.S.C. § 507(a)(4), an individual employee of the debtor may file a "priority" claim, up to the amount of $10,950, for "wages, salaries, or commissions," earned within 180 days before the filing of the bankruptcy petition or the cessation of the debtor's business, whichever occurs first.

[6]Unless otherwise indicated, all chapter, section and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1330, and to the Federal Rules of Bankruptcy Procedure, Rules 1001-9036, as enacted and promulgated *prior* to October 17, 2005, the effective date of The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. 109-8, Apr. 20,

unsecured claims when assets are finally distributed from the bankruptcy estate. The First Priority Claim was filed on behalf of the eleven named plaintiffs in the Civil Action and "all others similarly situated." Attached to the claim was a copy of the second amended complaint filed in the Civil Action. The putative "claimant class" identified in the First Priority Claim appears to be essentially the same group of individuals which the Lara Claimants identified as the putative plaintiff class in the Removed Civil Action.

In October 2006, the Debtors, subsequently joined by the Trustee, filed an objection to the First Priority Claim on the grounds that the Lara Claimants were not eligible to assert a priority claim under § 507(a)(4) (the "First Claim Objection"). The First Claim Objection was supported by a declaration from Casimiro stating that none of the Lara Claimants had worked for him within 180 days before the bankruptcy or before he closed his business. Had the court sustained that Objection, then the Lara Claimants would have been, at best, general unsecured creditors and their claim would have taken priority behind the administrative and substantial priority tax claims filed in the bankruptcy case. The Trustee's Objection was significant because it appears that the general unsecured creditors in this case will receive nothing on account of their claims.[7] For reasons that are not clear, the Trustee and the Debtors requested several continuances of the First Claim Objection. The matter was withdrawn before a response was filed.

In June 2007, the Lara Claimants amended and replaced the First Priority Claim with Claim #22. They asserted a "priority" claim in the reduced amount of $1,651,715. Claim #22 was filed by ten of the originally identified Lara Claimants "and all others similarly situated" who actually worked for Casimiro during the 180 days prior to the bankruptcy, and who might actually be entitled to a priority claim under § 507(a)4).

---

2005, 119 Stat. 23.

[7] In June 2007, the Internal Revenue Service filed a "priority" tax claim for $258,445.17. The IRS's tax claim exceeds the amount which the Trustee has available to distribute to creditors.

5

Based on the unrefuted evidence in the record that Casimiro had filed in support of the First Claim Objection, the court subsequently directed the Trustee to file and serve an objection to Claim 22 (the "Second Claim Objection"). The Second Claim Objection was filed in September 2007, and raised again a serious question about the Lara Claimants' standing to assert "priority claimants." The Trustee contended, *inter alia*, that he had done some discovery since filing the First Claim Objection and that the putative "claimant class" had more than one thousand members. He also alleged that only three of the named Lara Claimants appeared to be eligible to assert a priority claim in the bankruptcy. The remaining Lara Claimants were therefore not eligible for appointment to serve as "class representatives" for Claim #22.[8]

The Lara Claimants filed an opposition to the Second Claim Objection and a second motion with the district court asking to withdraw the reference of the Second Claim Objection. They asked this court to stay all proceedings on the Second Claim Objection pending a decision by the district court on, *inter alia,* withdrawal of the reference. The Lara Claimants argued that the district court was better qualified to certify a "claimant class" for purposes of Claim #22:

> Application of class action rules to a bankruptcy proof of claim in a chapter 7 liquidation case presents issues rarely, if ever, determined in this Bankruptcy Court. This proceeding is ready for prompt consideration of class certification, appointment of class counsel, and potentially approval of a class compromise. . . .
>
> Resolution of this Class Claim matter requires class certification, appointment of class counsel, and approval of a compromise - all under Rule 23, Fed. R. Civ. P. All of these matters can be accomplished with dispatch in the District Court, as the identities of class members have been drawn from payroll records, and substantial negotiations have occurred.

///

///

---

[8] At oral argument on this matter, the court asked the Lara Claimants' counsel, Mr. Raisner, why Claim #22 still identified, as putative class representatives, persons who were not eligible to assert a priority claim under § 507(a)(4). In response, Mr. Raisner stated: "Well, we're not trying to claim that they are. We simply left them in there."

6

> The fact that the Class Claim here should be certified under Rule 23(b)(1)(B) as a "limited fund" class - a less-used provision of Rule 23 - further indicates that this Court should make the class certification determination, in keeping with *Malone* and the *Lara* decision. The district court withdrew the reference regarding proofs of claim in *In re First Alliance Mortg. Co.*, 282 B.R. 894 (C.D. Cal. 2001), because judicial economy called for the same court to determine claims of individuals and of government entities against a bankrupt lender. Similar considerations apply here.

Lara Claimants' Opposition to Objection to Claim No. 22 filed December 12, 2005 at 7-8, footnote omitted.

The Lara Claimants subsequently asked the district court to delay any decision on the second motion to withdraw reference pending approval of this Settlement with the Trustee. The district court has never ruled on the Lara Claimants' motion to withdraw the reference of the Second Claim Objection.

**The Settlement.** The Trustee has now completed his administration of the estate and reports that there is approximately $200,000 available for payment of administrative expenses and priority claims. There will be nothing available for distribution to general (nonpriority) unsecured creditors. See footnote 7, *supra*. Before the district court ruled on the Lara Claimants' second motion to withdraw the reference, the Trustee, Debtors, and Lara Claimants negotiated the Settlement in an effort to compromise the Second Claim Objection.

The Settlement has essentially four parts. First, the parties agree that the Trustee will carve out $75,000 from funds in the estate, which will be set aside in full satisfaction of Claim #22 (the "Settlement Fund). Second, the parties agree to certify Claim #22 as a "priority class claim" and to designate the Lara Claimants the "class" representatives. Third, the Settlement would appoint Weinberg to serve as class counsel. Fourth, the Trustee would transfer the Settlement Fund to Weinberg to hold in its trust account until "some unspecified future time, to be distributed as the district court, or bankruptcy court may decide."

**Issue Presented.**

The problem here lies in the fact that the Lara Claimants seek to certify a "claimant

class" compromised of those who are entitled to a priority claim in this bankruptcy (*i.e.*, those employees who worked for Casimiro within 180 days before he filed bankruptcy or closed his business). The Lara Claimants' counsel has now acknowledged that several of the persons identified in Claim #22 may not be eligible to assert a "priority" claim and to serve as "claimant class" representatives. Significant questions remain regarding certification of a "claimant class." That "claimant class" is necessarily a subset of those persons who worked for Casimiro over a longer period of time and who may be entitled to pursue state and federal claims against Casimiro and the Growers in the Removed Civil Action and the District Court Litigation. Since the district court has not yet ruled on any motion to certify a plaintiff class in the Removed Civil Action, nor appointed class counsel to represent any plaintiffs in the Removed Civil Action, should this court approve the Settlement which recognizes the existence of that "sub-class," the putative "claimant class" identified in Claim #22, and appoint class counsel to represent that sub-class?

**Analysis.**

**Carve Out of the Settlement Fund.** The threshold question relevant to all compromises is whether the elements set forth in the case of *In Re A & C Properties*, 784 F.2d. 1377 (9th Cir. 1986) are satisfied. In order to determine the fairness, reasonableness and adequacy of the proposed Settlement, the court must consider:

1. Probability of success in the litigation;
2. Difficulties, if any, in collection;
3. Complexity of litigation and expense, inconvenience and delay attendant to it, and
4. The paramount interest of the creditors and a proper deference to their reasonable view.

In support of the Settlement, the Trustee assigns a 50% probability of success on the merits of the Second Claim Objection. There is also an economic factor to consider. The Trustee has gathered a total of $200,000 in the estate. When there are not enough funds to pay all of the claims within the "priority" group, then the funds are distributed pro-rata. § 726(b). Claim #22 and the IRS's priority claim total in excess of $1.9 million

- more than nine times the amount of funds in the estate. A significant portion of those funds could be exhausted in litigating the Second Claim Objection. In so far that the proposed Settlement carves out a reasonable fixed dollar amount in satisfaction of Claim #22, the court is persuaded that the Settlement is in the best interest of the creditors.

**<u>Certification of the Claimant Class.</u>** Second, is the question of whether or not the court should certify a claimant class composed of those persons who are eligible to assert a priority claim under § 507(a)(4) (the "Priority Claimant Class"). The district court has not yet ruled to certify any class in the Removed Civil Action or the District Court Litigation. For this court to certify a Priority Claimant Class prior to the time that the district court decides the general class certification issues, would create the possibility of inconsistent decisions on many of the same basic questions of law and fact.

In March 2008, the district court ordered the parties in the Removed Civil Action to file status reports. Defendants Stevco Inc., and FAL, Inc., dba Lucich Farms, filed status reports which characterized the status of the case as uncertain and dependant upon pending action in the District Court Litigation. Defendants stated:

> The Defendants submit that the status of the Removed [Civil] Action depends for the most part on what rulings the District Court may reach on the pending motion to dismiss filed by the Defendants in the [District Court] Litigation. If the District Court grants the Defendants' pending motion to dismiss and/or stay the federal litigation against them in the [District Court] Litigation, a remand of the Removed [Civil] Action to Kern County Superior Court should then promptly follow. The specific reasoning of the District Court on selected matters at issue in the [District Court] Litigation motion to dismiss briefing will likely be relevant to determining how best to proceed with litigation after the Court announces that reasoning. In the meantime, while the motions to dismiss in the [District Court] Litigation remain pending in the District Court, *neither Defendants nor Plaintiffs have taken any further substantive steps to pursue the Removed [Civil] Action. Defendants respectfully submit that the most efficient course now to follow in the Removed [Civil] Action would involve continuing to await the District Court's determination of the issues raised in the [District Court] Litigation motions to dismiss.* (Emphasis added).

The steps involved in certification of a "class" are complex and require specific findings of fact on numerous issues relating to the nature of the proposed class and the qualifications of the putative class representatives. The Lara Claimants have previously argued to the district court that the district court is best positioned to make the Rule 23

class determinations. They also argued that these questions were ready for "prompt consideration" in the district court. See Claimants' Opposition to Objection to Claim No. 22 at 7-8, cited above. After further consideration of the issues, this court agrees. The district court should first determine whether a "plaintiff class" is appropriate in the Removed Civil Action before any decision is made to certify a sub-class, the putative Priority Claimant Class, in this bankruptcy case.

### Conclusion.

Based on the foregoing, the court will approve the Settlement in part. The Trustee shall set aside $75,000 from the funds in this bankruptcy estate, which shall be deemed to fully satisfy Claim #22. The court declines to approve the remainder of the Settlement relating to the Class Motion. It is premature to certify a sub-class of claimants for Claim #22 and appoint counsel for that sub-class until the district court decides whether to certify a plaintiff class in the pending Removed Civil Action. When and if a plaintiff class is certified by the district court, and class counsel is appointed, the Lara Claimants may resubmit a request to certify a Priority Claimant Class for Claim #22 in this bankruptcy case and to appoint appropriate class counsel. Unless and until the district court appoints Weinberg to serve as the plaintiffs' class counsel, this court is not persuaded that it would be appropriate to order turnover of the Settlement Fund to Weinberg. The Trustee is the appropriate party to hold the Settlement Fund in trust for the beneficiaries of Claim #22.[9]

Dated: September __29__, 2008

W. Richard Lee
United States Bankruptcy Judge

---

[9] The court notes that priority wage claims are limited to $10,950 each. If the district court denies certification of a "plaintiff class" in the Removed Civil Action, then the Settlement Fund will be sufficient to pay in full the allowed priority claims of the named Lara Claimants who are eligible under § 507(a)(4).